Florian J. KWATERSKI, Plaintiff-Appellant,†

v.

LABOR & INDUSTRY REVIEW COMMISSION,
Petry Place/Estonian Inn, and United Fire & Casualty
Company, Defendants-Respondents.

Court of Appeals

*No. 90–0466–FT. Submitted on briefs July 23, 1990.—Decided
September 5, 1990.*

(Also reported in 462 N.W.2d 534.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Challoner Morse McBride* of *McBride Law Offices* of Sturgeon Bay.

On behalf of the defendant-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Stephen M. Sobota,* assistant attorney general.

On behalf of the defendants-appellants, Petry Place/Estonian Inn and United Fire & Casualty Company, the cause was submitted on the brief of *Mary Beth Callan* of *Denissen, Kranzush, Mahoney & Ewald, S.C.* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Florian J. Kwaterski appeals a judgment dismissing his appeal of a Labor and Industry Review Commission determination that it lacked jurisdiction to award further benefits for permanent partial disability and that no mistake had been made as to the cause of injury.[1] Kwaterski argues that the commission erred by concluding it had no jurisdiction and by rejecting his contention that his injury resulted from an occupational disease. Kwaterski further argues that under standards of fairness and basic justice, this court should reverse the commission's determination and direct a hearing on his application. Because we conclude that the commission properly determined that it had no jurisdiction and that Kwaterski's injuries did not result from an occupational disease and because this court lacks the power to direct an administrative hearing in the interest of fairness or basic justice, we affirm the commission's determination.

The facts underlying the issues in this case emanate from a January 1, 1984, application for hearing filed as a result of work injuries sustained in June 1982. Kwaterski claimed he was injured when he mixed muriatic acid with water to clean swimming pool filters. He claimed that these chemicals produced fumes to which he was exposed because he was inadvertently locked in the room where the chemicals were being mixed. He alleged that he sustained injuries to his mouth, bronchial tubes and lungs, as well as chronic bronchitis, other respiratory problems, and hearing and memory loss. The commission determined that Kwaterski had suffered an injury from an industrial accident, that the healing period was completed and that he was entitled to receive temporary total disability payments, medical payments and com-

---

[1] This is an expedited appeal under Rule 809.17.

pensation for a ten percent permanent partial disability. The commission issued its decision on April 10, 1986. Kwaterski appealed the commission's determination. The Door County Circuit Court and this court affirmed,[2] concluding that substantial evidence supported the commission's determination.

On July 1, 1987, Kwaterski filed a second application for hearing alleging that he suffered paralysis to a portion of his right lung that had only recently been discovered. On May 16, 1988, he filed a third application for hearing alleging that he had recently suffered a heart attack caused by the June 1982 accident.

The commission determined that it had no jurisdiction to consider the second and third applications for hearing. It ruled that to the extent Kwaterski's recent injuries resulted from the industrial accident, Wisconsin law precluded relitigation of the compensation claim. The commission also reviewed the medical reports submitted in support of Kwaterski's applications and concluded that these reports did not indicate that Kwaterski suffered from an occupational disease and were therefore insufficient to demonstrate that the commission had made a mistake in treating the injuries as arising from the June 1982 accident.

The first issue is whether the commission has jurisdiction to entertain an application for hearing when the commission has previously held a hearing and awarded benefits for injuries resulting from the incident that is alleged to have given rise to the injuries in question. Resolution of this issue requires statutory construction. The construction or application of a statute to a set of undisputed facts presents a question of law. *Bucyrus-*

---

[2]*Kwaterski v. LIRC,* No. 87–1275 unpublished slip op. (Ct. App. April 12, 1988).

*Erie Co. v. DILHR,* 90 Wis. 2d 408, 417, 280 N.W.2d 142, 146–47 (1979). We are not bound by the agency's legal conclusion. *State v. DILHR,* 101 Wis. 2d 396, 403, 304 N.W.2d 758, 761 (1984).

■

The commission may set aside any final order or award within one year after the date of the order or award. Section 102.18(4)(c), Stats. Kwaterski filed his second and third applications for hearing fourteen months and twenty-five months after the commission issued its order. The commission simply has no jurisdiction to hear these new applications. As the Wisconsin Supreme Court stated in *Borum v. Industrial Comm'n,* 13 Wis. 2d 570, 573–74, 108 N.W.2d 918, 920 (1961):

> We have held that an injured employee's right to recover workmen's compensation is based on ch. 102, Stats.; he has but one cause of action for compensation for all injury and disability sustained as a result thereof, and his claim therefor is not severable. When the commission makes findings and a final award it is not passing upon merely the employee's right to compensation for certain claimed or then-known injuries. It is passing upon all compensation payable for all injuries caused by that accident. Having entered a final order on the subject and the statutory time for review having expired, the commission lacks jurisdiction to proceed on a subsequent application for injuries allegedly sustained in the same accident. We have applied this principle to deny relitigation of compensation claims after disposition of them has been made by the commission's final orders and the time for review has expired. For example, see *Gergen v. Industrial Comm.,* (1946), 249 Wis. 140, 142, 143, 23 N.W.(2d) 473. The commission thereafter has no further jurisdiction to resume consideration of the

consequences of the same accident. (Citations omitted.)

Because the applications for hearing were made more than one year after the commission's final order, the commission lacked jurisdiction to entertain them.

The result is disturbing, and it is clear that these allegations draw into question the commission's determination that Kwaterski's healing period had been completed. Errors may occur in any litigation, and, as much as they are to be lamented, they are part of the cost that this system endures in the interest of achieving some finality to litigation. In the absence of such a concluding point, this system would necessarily assume the additional costs of continued supervision. Our legislature has seen fit to provide for the finality of worker's compensation claims, and we are powerless to nullify that legislative determination.

Kwaterski attempts to escape the finality of the commission's determination with a series of alternate theories. Kwaterski first contends that *Borum* is inapposite because the commission in *Borum* determined that the applicant suffered no permanent disability. Kwaterski further argues that in *Borum* the court was reviewing a new application for hearing whereas in this case the application was for a rehearing based upon new medical evidence. These distinctions do nothing to change the conclusion that after the commission makes a final order and the period of review has expired, the commission's determination is final for all purposes.[3]

---

[3]Kwaterski also argues that the commission's determination was not a "final order," because his condition has deteriorated since the order. This argument goes to the correctness of the commission's order, not its finality.

Kwaterski next contends that the prior determination was for the injuries resulting from an industrial accident but his subsequent applications for hearing were for injuries resulting from an occupational disease. This distinction is crucial. As previously noted, the commission may set aside a final order within one year after the date of the award. However, the commission has three years to set aside a final order if it appears that a mistake was made in treating the matter as an accident, when in fact the employee suffers from an occupational disease. Section 102.18(5), Stats. In addition, the commission may occasionally review its findings, orders or awards in occupational disease cases. Section 102.18(6), Stats.

To the extent Kwaterski argues that the single accident in June 1982 gave rise to an "occupational disease," he presents a question of law because we must apply that legal standard to undisputed facts. *Nottelson v. DILHR,* 94 Wis. 2d 106, 115–16, 287 N.W.2d 763, 768 (1980).

The law is well-settled that an occupational disease cannot result from a single incident. *Rathjen v. Industrial Comm'n,* 233 Wis. 452, 460, 289 N.W. 618, 622 (1940). As that court noted:

> The mere fact that a disease follows as a result of an accident does not constitute suffering therefrom an occupational disease within the contemplation of the act. An occupational disease, as that term is used in the act, is a disease like silicosis, which is acquired as the result and an incident of working in the industry over an extended period of time.

*Id.* "An accidental injury is an injury that results from a definite mishap." *Andrzeczak v. Industrial Comm'n,* 248

119

Wis. 12, 14, 20 N.W.2d 551, 552 (1945). Thus, as a matter of law, Kwaterski could not have suffered from an occupational disease resulting from the single incident in June 1982.

To the extent Kwaterski argues that repeated work-related exposure to muriatic acid gave rise to an "occupational disease" and that the commission thus erred in its final order, which treated the symptoms as arising from the June 1982 incident, the commission has been given the discretion to set aside its previous order based on that mistake. *See* sec. 102.18(5), Stats. This section reads in part: "If it shall appear to the department that a mistake *may* have been made as to cause of injury in the findings, order or award upon an alleged injury based on accident, when in fact the employe was suffering from an occupational disease, the department *may* . . . set aside such findings, order or award." (Emphasis supplied.) This language creates a permissive action by the commission that is addressed to the exercise of discretion. This court will sustain the commission's exercise of its discretion if the record reflects the commission's reasoned application of the appropriate legal standard to the relevant facts in the case. *Madison Gas & Elec. Co. v. PSC,* 109 Wis. 2d 127, 137, 325 N.W.2d 339, 344 (1982).

While it is unclear that Kwaterski is advancing the argument that long-term exposure to chemicals in his job caused the symptoms identified in his applications for hearing, this position is consistent with the commission's treatment of his applications, and we therefore address it. The commission argues that its factual finding that these symptoms did not arise from an occupational disease must be reviewed by using the substantial evidence test. We agree that substantial evidence must

support the agency's factual findings. *Nottelson,* 94 Wis. 2d at 114, 287 N.W.2d at 767. We note, however, that no evidentiary hearing was held and that no evidence on this issue was before the commission. The commission cannot make findings of fact without an evidentiary basis. Thus, we review this issue by the abuse of discretion standard in accordance with sec. 102.18(5), Stats., permitting the commission to correct a mistake in treating an occupational disease as an accident.

The commission examined the four medical reports submitted by Kwaterski and concluded that the reports failed to show that his current injuries resulted from repeated exposure to chemicals and was thus an occupational disease. None of the four reports described any causal disease process resulting from repeated exposure to muriatic acid. Instead, each of the reports referred to the June 1982 incident in describing "the accidental event or work exposure to which patient attributes his/ her condition." Moreover, in his second and third applications for hearing, Kwaterski attributed his new injuries to the same accident. The commission thus ruled that Kwaterski failed to show that a mistake may have been made as to the cause of injury.

This ruling is supported by the record and by the definitions of disease and accident as previously set forth. Because there was no indication that the commission erred by treating Kwaterski's injuries as arising from an accident rather than an occupational disease, we conclude that the commission did not abuse its discretion by denying Kwaterski's applications for hearing.

Kwaterski argues that it is illogical to differentiate between an "accidental injury" or "occupational disease" based on whether the injury arose from a one-time occurrence or repeated exposure. While it may seem that

a distinction based on the degree of predictability of recovery would be fairer, neither our supreme court nor the legislature has seen fit to make this the basis for distinguishing between "accidental injury" and "occupational disease."

Finally, Kwaterski urges us to reverse the commission's determination in the interest of fairness and basic justice. While this court has the power of discretionary reversal under sec. 752.35, Stats.,[4] this power is not applicable to judicial review of a commission's orders under the Worker's Compensation Act. *Wagner v. Industrial Comm'n,* 273 Wis. 553, 567d, 80 N.W.2d 456, 458 (1957); *see also Chicago & N.W. R.R. v. LIRC,* 98 Wis. 2d 592, 612–13, 297 N.W.2d 819, 828 (1980). This court is without the power to reopen a matter that has been fully and finally determined under the terms and provisions of the Act. While we recognize that Kwaterski alleges significant additional injuries for which he was not compensated, we are powerless to change the result.

*By the Court.*—Judgment affirmed.

[4]Section 752.35 provides:

In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.